UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GREGORY MILLER, | CASE NO. 1:07CV1884 |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | Magistrate Judge George J. Limbert |
| COMMISSIONER OF SOCIAL SECURITY, | **Report and Recommendation of Magistrate Judge** |
| Defendant. | |

Gregory Miller ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  Plaintiff asserts that the Administrate Law Judge ("ALJ") failed to explain his rationale for implicitly rejecting a treating physicians' opinion. ECF Dkt. #16 at 2.  Plaintiff further contends that the ALJ erred in finding that Plaintiff was not illiterate. *Id*.  For the following reasons, the undersigned RECOMMENDS that Court REVERSE the ALJ's decision and REMAND the instant matter for further factfinding, analysis, and articulation.

**I.  PROCEDURAL AND FACTUAL HISTORY**

On June 17, 2002, Plaintiff filed applications for DIB and SSI with an alleged onset date of May 16, 2002. Tr. at 53-55, 300-01.  These applications were initially denied on October 5, 2002. *Id*. at 305-308.  Plaintiff did not appeal.  ECF Dkt. #16 at 2.

On January 31, 2003, Plaintiff filed new applications for DIB and SSI. Tr. at 56-58, 309-10. Plaintiff alleged disabilities resulting from deafness in his right ear, seizures, learning disabilities, and a broken right leg and hip. *Id*. at 76.  Plaintiff's claims were denied initially and on reconsideration. *Id*. at 42-44, 312-316, 318-320.

On November 8, 2005, an ALJ conducted a hearing where he received testimony from Plaintiff and Evelyn Sindelar, a vocational expert. Tr. at 324-370.

On June 30, 2006, the ALJ issued an unfavorable decision. *Id*. at 11-18.  On May 2, 2007, the Appeals Council denied Plaintiff's request for reconsideration. *Id*. at 6-8.

On June 25, 2007, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.

**II**.     **SUMMARY OF RELEVANT PORTIONS OF ALJ'S DECISION**

The ALJ reviewed medical records indicating that Plaintiff had fallen at work after experiencing a seizure. Tr. at 14. Plaintiff's last seizure occurred one year earlier, but Plaintiff had discontinued his anti-seizure medication because he was unable to stop drinking alcohol. *Id*.

The ALJ noted that, in September 2002, Plaintiff underwent a consultative psychological examination by Ronald G. Smith, Ph.D (although the ALJ did not mention Dr. Smith's name). Tr. at 14.  Plaintiff indicated that he participated in special education classes from eighth grade until he graduated from high school. *Id*.  Plaintiff denied any psychiatric treatment, but he claimed to be in a poor mood. *Id*.  Dr. Smith administered a Wechsler Adult Intelligence Scale – Third Edition test ("WAIS-III") and measured Plaintiff's I.Q. in the low to mid 80's, indicating low average intellectual functioning. *Id*.  The ALJ noted that memory testing demonstrated average scores in the 100s, but the ALJ attached no significance to that measurement. *Id*.  The ALJ noted that Dr. Smith measured Plaintiff's reading ability at the third grade level and he diagnosed a reading disorder and alcohol dependence. *Id*.   Dr. Smith opined that Plaintiff's attention and concentration were good and he was able to follow simple one or two-step instructions and to relate to the public, co-workers, and supervisors. *Id*.

The ALJ then looked to treatment records from August 2002,when Plaintiff suffered a right hip and leg fracture. Tr. at 14.  The ALJ noted that Plaintiff's bones were stabilized with open reduction and internal fixation hardware. *Id*.  Plaintiff underwent good healing, with his pain rated at one to two on a scale of ten by November 2002. *Id*.  Plaintiff also reported walking well without assistive devices. *Id*.  His doctor instructed him to advance his weight bearing and follow-up in three-month intervals. *Id*.  In April of 2003, however, Plaintiff returned to treating orthopedist Glenn Whitted, M.D. with complaints of worsening right knee pain and crepitus. *Id*.  Dr. Whitted concluded that Plaintiff may have been experiencing pain due to his altered gait, and he administered

-2-

a cortizone injection to treat the pain. *Id*. In July 2003, Alfred Serna, M.D. (again the ALJ did not refer to the physician by name (*See* Tr. at 256)) examined Plaintiff and observed through x-rays that Plaintiff's fixation hardware had become dislodged and he had a right femoral neck fracture. *Id*. at 14. The following day, Plaintiff underwent surgery to have the fixation hardware removed and a total hip replacement installed. *Id*. In October of 2003, Plaintiff reported that his hip was doing well, but he was experiencing right knee instability for which doctors prescribed home exercises. *Id*. He returned for a follow-up exam the next month with complaints of thigh pain rating two to three on a scale of ten. *Id*. An examination revealed patella femoral crepitus and a good range of motion. *Id*. Plaintiff was advised to continue his knee strengthening exercises. *Id*.

In September 2003, at the same time Plaintiff's previously mentioned orthopaedic problems were developing, he underwent a psychiatric examination. Tr. at 14 (again the ALJ does not mention the name of the psychiatrist, Emil K. Ibrahim, M.D., and Dr. Ibrahim's report was actually dated December 17, 2003 (*See* Tr. at 259.)). Plaintiff denied past hospitalization or outpatient treatment and he denied current feelings of depression. *Id*. He was able to recall only one out of three objects after five minutes. *Id*. at 14-15. He could not perform serial computations or spell words besides his name correctly. *Id*. at 15. Dr. Ibrahim advanced a diagnosis of alcohol dependence. *Id*.

In January 2005, Plaintiff reported to his treating neurologist that he had not experienced a seizure since July 2003 and that he had maintained sobriety. Tr. at 15 (again the ALJ does not mention the name of the physician, Sanjay R. Parikh, M.D. (*See* Tr. at 271.)). Dr. Parikh concluded that Plaintiff was able to resume driving, but he would have to continue taking his anti-seizure medication. *Id*.

Concluding his review of the medical evidence, the ALJ noted that Plaintiff was treated for a chronic ear infection and non-specific complaints of gastric distress for which he indicated good relief with TUMS. Tr. at 15.

The ALJ summarized the hearing testimony, noting that Plaintiff: denied consuming alcohol since 2002; alleged that the psychologist did the writing for him during testing; could not recall the special education classes he took in school but remembered that some involved learning how to

cork; his daily activities include cooking, washing dishes, doing laundry, making his bed, vacuuming, getting dressed, and tending to his personal hygiene; he has a driver's license with a seizure restriction; he does his own grocery shopping; he does not require a walking aid or braces; his last seizure occurred on June 26, 2003; he takes medications but cannot read their names; he is deaf in his right ear; he was told that he could not work for a company following a seizure; Dr. Cozmin is no longer his family physician; and he limps and has balance problems, but he is unable to explain why. Tr. at 15.

The ALJ then found that Plaintiff could perform a wide range of "light" work activity. Tr. at 15. The ALJ reasoned that Plaintiff's daily living activities are consistent with the ability to: lift, carry, push and/or pull 10 pounds frequently and 20 pounds occasionally; sit for 8 hours with normal breaks in an 8 hour workday; to stand or walk with normal breaks for 6 hours in a workday; and to occasionally stoop, crouch, kneel, and crawl. *Id*. The ALJ, however, found that Plaintiff's seizure disorder limited his abilities to: climb ropes, ladders, and scaffolds; work at unprotected heights; or work around unprotected dangerous machinery, open flames, or where driving is a principle duty of the job. *Id*. at 15-16. Based upon the vocational expert's testimony, the ALJ concluded that significant jobs existed in the economy that were suitable for Plaintiff, namely, checker I (DOT code 222.687-014), housekeeper (DOT code 323.687-014), and garment worker (DOT code 369.387-010). *Id*. at 16. The ALJ further noted that the record fails to support Plaintiff's contention that he is illiterate because Plaintiff completed high school with B and C grades (including English, math, social studies, and science), there was no indication that the psychiatrist completed the written portion of Plaintiff's testing, and Plaintiff's reading ability was measured at the third grade level. *Id*. Even so, the ALJ noted that the vocational expert indicated that the housekeeping position does not require reading or writing, and the checker I and laundry worker jobs do require some ability to read and write. *Id*. Therefore, the ALJ concluded that significant jobs exist in the economy for Plaintiff. *Id*.

**III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable

mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

### A. The ALJ's failure to mention treating physician Dr. Cozmin's opinion

Plaintiff contends that the ALJ failed to mention Dr. Cozmin's May 11, 2005 report setting forth opinions regarding Plaintiff's physical abilities and limitations. ECF Dkt. #16 at 9. Defendant contends that the reasons for the ALJ's rejection of Dr. Cozmin's opinion can be inferred from his decision. ECF Dkt. #18 at 9-10. Defendant further contends that harmless error exists because Dr. Cozmin's opinion is so patently deficient that the Commissioner could not possibly credit it. *Id.* at 11 citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004).

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); Wilson, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good

-6-

reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Here, Dr. Cozmin's opinion is entitled to deference under the treating physician rule because she treated Plaintiff from October 2, 1998 through April 19, 2005. *See* Tr. 299. Further, her treatment notes indicate that she made multiple clinical observations and ordered multiple laboratory tests. *Id*. at 285-297. Dr. Cozmin then opined that Plaintiff could stand for only thirty minutes at a time for a total of four hours in a workday. *Id*. at 298. She opined that Plaintiff could sit for four hour periods in an eight hour workday. *Id*. Dr. Cozmin concluded that Plaintiff could lift or carry ten pounds occasionally or five pounds frequently. *Id*. She opined that Plaintiff could occasionally stoop and use hand controls. *Id*. She opined that Plaintiff could reach frequently. *Id*. Dr. Cozmin finally concluded that Plaintiff could never balance, work around dangerous equipment, operate a motor vehicle, or tolerate heat, cold, dust, smoke, or fumes. *Id*.

The ALJ failed to even acknowledge Dr. Cozmin's opinion. *See* Tr. at 13-17. Therefore, his decision is contrary to Social Security Ruling 96-2p, which makes it mandatory for an ALJ to articulate good reasons for discounting a treating physician's opinion. The instant case provides an excellent example of why ALJs are required to articulate their rationale. Here, the Plaintiff is left to wonder why the ALJ rejected the opinion from her physician who had treated him for approximately six-and-a-half years. The Court is likewise left in the dark and unable to undertake

meaningful appellate review. In short, there is absolutely no indication that the ALJ took the requisite factors (the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors) into consideration. As the *Wilson* court stated:

> The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. An agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice" and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, "even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed."

*Wilson*, 378 F.3d at 544 (internal citations omitted). Since the ALJ clearly violated administrative procedures in this case, the undersigned recommends that the Court remand the matter for further articulation.

Defendant's post hoc justifications for the ALJ's decision are unavailing. In *Fisk v. Astrue,* 253 Fed.Appx. 580, 2007 WL 3325869 at \*\*3, \*\*6 (6th Cir. Nov. 9, 2007), the Sixth Circuit rejected a similar effort to justify an ALJ's insufficient explanation. *See also Rogers,* 486 F.3d at 243; *Wilson*, 378 F.3d at 544. In fact, the Sixth Circuit has routinely held that "[T]o recognize substantial evidence as a defense to non-compliance with § 1527(d)(2)[ ] would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Fisk*, 2007 WL 3325869 at \*\*6 quoting *Wilson*, 378 F.3d at 546.

Defendant's argument that the ALJ's error was harmless also lacks merit. Defendant contends that Dr. Cozmin did not provide any substantial analysis and her treatment notes were inconsistent with her conclusions. ECF Dkt. #18 at 11. Although Defendant goes on to point to inconsistencies in Dr. Cozmin's treatment notes and her opinion, the undersigned believes it is incumbent upon the ALJ to articulate his reasons for rejecting Dr. Cozmin's opinion. The undersigned fails to see that Dr. Cozmin's opinion is patently defective or that the Commissioner could not possibly credit it. *See Wilson*, 378 F.3d at 547. In *Fisk*, the Sixth Circuit rejected the Commissioner's argument that a treating physician's opinion was so patently defective that the Commissioner could not possibly credit it when the physician's opinion listed the claimant's impairments, set forth RFC findings, and attached treatment notes. *Fisk*, 2007 WL 3325869 at \*\*3,

\*\*6. The court stated that an ALJ can only rarely meet the goal of the treating physician rule without following the letter of the rule. *Id*. The court concluded that remand was necessary because the district court was unable to engage in meaningful review or to determine that the ALJ recognized the nature and extent of the treating physician's relationship with the claimant. *Id*. In the case at bar, Dr. Cozmin's opinion is sufficiently supported by clinical evidence and an extensive treatment relationship to raise the same concerns the Sixth Circuit expressed in *Fisk*. Therefore, this is not a case where the ALJ's error was harmless, and the undersigned recommends that the Court remand the instant case for further factfinding, analysis, and articulation.

### B. The ALJ's finding of literacy

Plaintiff also contends that substantial evidence does not support the ALJ's determination that he is literate. ECF Dkt. #16 at 12-14. In light of the foregoing recommendation that the case be remanded and the possibility that the ALJ on remand may find Plaintiff's RFC to be in the sedentary range, the undersigned believes the issue of literacy is crucial. *See Glenn v. Sec'y of Health and Human Servs*, 814 F.2d 387, 389 (7th Cir. 1987) ("in recognition of the fact that very few sedentary jobs are available in the economy for people who can't read and write, . . . an illiterate person who is disabled from performing all but sedentary work is disabled, period.").

Here, the ALJ found that Plaintiff was literate because: he has a high school education; psychological testing showed an average memory, good concentration and attention, and an ability to read at the third grade level; there was no indication that Plaintiff did not complete the written portion of his testing; and he received B and C grades in academic subjects including, math, social studies, and science. Tr. at 16. The undersigned finds that the ALJ's determination of literacy is not supported by substantial evidence for several reasons.

First, the most obvious error relates to Plaintiff's academic record. While the ALJ notes that Plaintiff received B's and C's, the ALJ does not acknowledge that Plaintiff's academic record is replete with D's and F's. *See* Tr. at 132. In fact, it appears that Plaintiff received more D's and F's than B's and C's. *Id*. Further, the ALJ did not mention that there is a stamp on Plaintiff's transcript indicating that the grades shown indicate the achievement level of the student rather than grade level placement. *Id*. Therefore, the ALJ's evaluation of Plaintiff's academic record is insufficient to

-9-

establish that the record is inconsistent with Plaintiff's claim of illiteracy.

Next, the ALJ contends that Plaintiff's ability to read was measured at the third grade level. The ALJ's finding is apparently based on state agency consulting psychologist Ronald Smith, Ph.D.'s report, which states that Plaintiff could read at the third grade level as suggested by the BASIS reading comprehension test. *See* Tr. at 164. The ALJ, however, failed to acknowledge that Dr. Smith's same report also stated that Plaintiff passed the reading comprehension criteria for grade level two, but he was unable to pass at the third grade level and was unable to correctly pronounce many words. *Id.* at 163. Further, the ALJ failed to acknowledge the opinion of state agency reviewing psychologist Dr. Melvin, who stated that Plaintiff was reading at the second grade level. *Id.* at 226.

Moreover, the ALJ's reliance on Plaintiff's high school education was misplaced. In *Skinner v. Secretary of Health & Human Services*, 902 F.2d 447, 450 (6th Cir. 1990), the Sixth Circuit stated that a claim record was "replete with evidence that [a claimant was] illiterate" because, inter alia, the claimant's WRAT results indicated that he read below the third grade level. The court went on to state, " We find error in the ALJ's reliance upon the numerical grade indicated in the disability report as a basis for finding that Mr. Skinner possessed a marginal education" because " numerical grade level is properly used to determine a claimant's educational abilities only if contradictory evidence does not exist." *Id.* This Court should similarly find that it was improper for the ALJ to conclude that Plaintiff was literate because contradictory evidence exists in the form of a measured second-grade reading level and indications on his transcripts that his grades were not representative of his grade level.

Lastly, the ALJ stated that there was no indication that Plaintiff did not complete the written portion of his psychological testing. Regardless of how the testing occurred, however, Dr. Smith determined that Plaintiff was reading only at the second-grade level. Further, the undersigned cannot undertake a meaningful review of the record to interpret the ALJ's rationale because the ALJ has failed to cite the portions of the record supporting his conclusion. The ALJ first stated "The psychologist did the writing for [Plaintiff] on the testing." Tr. at 15. The ALJ cited no portion of the record for support, and thus, the undersigned has no guidance for determining the ALJ's basis

-10-

for his statement. The ALJ then stated that "there is no indication that the claimant did not complete the written portion of the testing." *Id*. at 16. Since the ALJ cites no portion of the record to support this statement, the Court is left to comb through the record itself. Upon the undersigned's review of the record, it appears that the ALJ misinterpreted the record when he implied that the claimant did not complete the written portion of the testing in spite of Plaintiff's testimony that he did not remember doing any writing. At the administrative hearing, Plaintiff stated that he *did not remember* doing any of the writing for the psychological testing. *Id*. at 336 (emphasis added). The relevant portion of the examination follows:

> Q (by the court)    I noticed from medical records you took a, you took, were tested by a psychologist. Who did the writing for that?
>
> A    I'm sorry, sir, I don't remember. I remember the psychologist but I don't remember me writing.

Tr. at 336. Even if Plaintiff's testimony could be interpreted as an assertion that the psychologist did the writing for him, the ALJ has failed to articulate a basis for rejecting that testimony despite his earlier finding that Plaintiff was a fairly credible witness. *Id*. at 15. "[T]he reviewing court cannot infer that the ALJ rejected plaintiff's testimony and supply reasons for him by combing through the record itself." *See Jefferson v. Heckler*, No. 85 C 2242, 1986 WL 8379 (N.D.Ill.July 15, 1986) unreported. "The rejection and reason(s) for it must be apparent from the ALJ's opinion alone." *Id*. In this case it is not even clear why the ALJ concluded that the psychologist did any of the writing for Plaintiff during testing or why the ALJ discredited Plaintiff's statement at the administrative hearing.

      In light of the ALJ's misinterpretation of Plaintiff's academic record, his unjustified reliance on Plaintiff's grade level, his failure to scrutinize Dr. Smith's facially inconsistent report, his misinterpretation of Plaintiff's testimony , and his unsupported rejection of that testimony, the undersigned recommends that the Court remand the case for further factfinding, analysis, and articulation on the issue of Plaintiff's literacy.

## VI. CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court REVERSE the ALJ's decision and REMAND the instant matter for further articulation.


DATE: June 17, 2008                    */s/George J. Limbert*
                                                             GEORGE J. LIMBERT
                                                             UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).